IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BETTE P. TRAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 C 08907 |
| | ) | |
| MEGAN BRENNAN, Postmaster | ) | Judge John J. Tharp, Jr. |
| General, United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Bette Travis worked as a customer service supervisor for the U.S. Postal Service at the Jackson Park post office in Chicago. She was diagnosed with Chronic Obstructive Pulmonary Disease (COPD) in 2010 and was totally incapacitated and unable to work from 2012 to 2014. Her doctor released her to return to work beginning on December 16, 2014, but she was not permitted to return to work by the Postal Service until February 25, 2016. She alleges disability discrimination and retaliation by the Postal Service[1] based on two related but distinct events. First, she maintains that the Postal Service failed to reasonably accommodate her disability when she was able to return to work by demanding additional medical documentation. Second, she claims that the Postal Service retaliated against her by not permitting her to return to work after an improper notice of termination that had been sent to her in error was rescinded. In April 2016, Ms. Travis lodged an administrative complaint with the Postal Service, which denied her claims and

---

[1] Although the complaint does not say so expressly, the named defendant, Postmaster General Megan J. Brennan, is being sued in her official capacity only, as Title VII, ADA, and Rehabilitation Act claims may only be asserted against employers, *see EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-82 (7th Cir. 1995), and there are no allegations concerning General Brennan.

issued a right to sue letter.[2] Ms. Travis filed this suit and the Postal Service has moved for summary judgment. Because Ms. Travis has not shown that either of the Postal Service's actions—refusing to grant her request for a reasonable accommodation without additional medical documentation and not permitting her to immediately return to work after the notice of removal was rescinded— were discriminatory or done in retaliation for her EEO activity, the Postal Service's motion for summary judgment is granted.

**BACKGROUND**

The facts are undisputed unless noted otherwise and, where disputed, are construed in the plaintiff's favor. Ms. Travis, a Postal Service customer service supervisor, has COPD and did not work from 2012 to 2014 because of her condition.[3] DSOF ¶ 1. Her doctor cleared her to return to work, with restrictions, beginning on December 16, 2014. PSOF ¶ 26. When Ms. Travis attempted to return to work on December 16 her manager, Ruth Green, told her that her medical documentation was inadequate and that she would not be allowed to return to work without supplemental documentation. *Id.* ¶¶ 26-27; DSOF ¶ 7. Ms. Travis tried to address the issue with other personnel in early 2015 without success. Bette Travis Dep. at 175:20–179:6, ECF No. 71-2. On June 5, 2015, Ms. Green issued Ms. Travis a notice of removal due to her absence, proposing that she be discharged. DSOF ¶ 2. Seemingly notwithstanding the proposed discharge, Ms. Green

---

[2] "The Postal Service, like every other federal agency, is charged with the initial disposition of discrimination complaints lodged against the agency by its employees. *See* 39 C.F.R. § 255.6; 29 C.F.R. §§ 1614.101 *et seq.* . . . Once an agency has dismissed or otherwise disposed of a complaint, federal employees have the right to appeal that decision to the EEOC, *see* 29 C.F.R. §§ 1614.403 *et seq.*, or file a complaint in federal court, *see* 29 C.F.R. § 1614.407." *Smith v. Potter*, 445 F.3d 1000, 1002 n.1 (7th Cir. 2006).

[3] According to the COPD Foundation, COPD is a term used to describe chronic lung diseases such as emphysema and chronic bronchitis that interfere with breathing. *See What is COPD?*, COPD Foundation (Feb. 25, 2020), https://www.copdfoundation.org/What-is-COPD/ Understanding-COPD/What-is-COPD.aspx.

wrote to two managers, John Umphlett and Valencia Williams, on June 30, 2015 saying, "Ms. Travis is [sic] requested reasonable accommodation." PSOF ¶ 17. On July 10, 2015, Ms. Travis initiated an informal EEO complaint alleging that Ms. Green had failed to reasonably accommodate her restrictions. DSOF Ex. 9, ECF No. 71-3. On July 22, 2015, human resources manager Joseph Jenkins sent a letter to human resources analyst Barbara Jones stating that the proposed removal was improper and that the customer services operations manager would "take the necessary corrective action." HR Letter, ECF No. 71-3; DSOF ¶ 2.

The parties reached a settlement of Ms. Travis's informal EEO complaint in October 2015. As part of that settlement, Ms. Travis was referred to the postal district's reasonable accommodation committee (DRAC) to determine what accommodations she might need to return to work.[4] She submitted documentation from her doctor that described her diagnosis as "complex medical issues" and prescribed work restrictions, including avoiding dust, smoke, mold, strenuous activity, and stressful situations. DSOF ¶ 4. Ms. Travis did not state during the meeting that she did not want or need an accommodation. *Id.* ¶ 5. The committee asked Ms. Travis for more medical information, which she did not provide. *Id.*; *see also* Accommodation Decision, ECF No. 86-6 ("You were provided fourteen (14) days to provide the documentation to support your need for reasonable accommodations. The committee has not received a request for an extension or any medical evidence to determine if you qualify for reasonable accommodations.").

On December 18, 2015, the DRAC sent Ms. Travis a letter denying her request for an accommodation because she did not provide additional medical documentation to clarify her work

---

[4] Ms. Green also received training on the reasonable accommodation process pursuant to the settlement agreement. The plaintiff asserts, and the defendant disputes, that Ms. Green received two seven-day suspensions related to Ms. Travis's EEO complaint. PSOF ¶ 32. This dispute is not material to resolution of the pending motion.

restrictions, provide a proper diagnosis for the "complex medical conditions" referenced in her initial medical documentation, and describe how her condition adversely impacts her daily activities. DSOF ¶ 6. Ms. Travis did not work in October, November, or December 2015. *Id.* ¶ 7. Ms. Travis contacted the EEO office on December 31, 2015 for pre-complaint counseling. PSOF ¶ 14.

In January 2016, Mr. Jenkins sent a letter to Ms. Travis rescinding the improper notice of removal. *See* Rescission Letter, ECF No. 86-4.[5] Ms. Travis asserts that she did not receive the rescission. Instead, she received a "five-day letter" indicating that she was absent from work without leave and requiring her to submit medical documentation regarding her absence.[6] DSOF ¶ 8. As part of the five-day letter, she received a date for an investigative interview. The interview, with manager of customer service operations David Clark, was held on February 24, 2016. Ms. Travis and Mr. Clark discussed her work restrictions and agreed that she would avoid dust, stress, and physical exertion. *Id.* ¶ 9. Ms. Travis was able to choose a later shift, beginning at 11:00 a.m., that would be less stressful than an earlier shift. Ms. Travis returned to work the next day, on February 25, 2016. *Id.* ¶ 10.

Ms. Travis received a Notice of Right to File – Mixed Complaint from the Postal Service on March 29, 2016 and filed a formal EEO complaint on April 13, 2016. PSOF ¶¶ 15-16. The Postal Service issued a final agency decision finding no discrimination on August 16, 2016. DSOF ¶ 13; Final Agency Decision, ECF No. 86-5. Ms. Travis then filed this case, alleging disability discrimination and retaliation. The defendant filed a motion for summary judgment, arguing that

---

[5] The date of the letter Mr. Jenkins wrote to Ms. Travis is erroneously listed as January 15, 2017, rather than 2016, in DSOF ¶ 2.

[6] The parties dispute when Ms. Travis received this letter; the defendant says it was received in January 2016, and the plaintiff says she received it "on or slightly after February 17, 2016." PSOF ¶ 8.

4

some of Ms. Travis's claims are barred, that her disability discrimination claim fails because she caused the breakdown of the interactive process in determining a reasonable accommodation, and that she cannot show that the Postal Service retaliated against her for her prior EEO activity.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Factual disputes do "not preclude summary judgment when the dispute does not involve a material fact." *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015). When considering the summary judgment materials, the Court must "construe all facts and draw all reasonable inferences in favor of the nonmoving party." *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011).

### I. Scope of Relevant Conduct

As an initial matter, the parties disagree about the scope of the claims to be considered. The proper scope of a judicial proceeding following an EEO charge "is limited by the nature of the charges filed with the EEOC." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). Specifically, a plaintiff may bring only claims that were included in the EEO charge or are "reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011) (alteration in original). In this case, the Postal Service accepted two of Ms. Travis's EEO charges for investigation: the denial of her

5

accommodation in December 2015, and her failure to return to work from the time the notice of removal was rescinded in January 2016 until after her meeting with Mr. Clark in February.

The Postal Service contends that the October 2015 settlement agreement bars Ms. Travis's failure to accommodate claims prior to October 7, 2015, that Ms. Travis's claims prior to November 16, 2015 are time-barred for failure to seek EEO counseling within 45 days (she contacted an EEO counselor on December 31, 2015), and that Ms. Travis did not exhaust her administrative remedies for her harassment claim. In executing the settlement agreement on October 7, 2015, Ms. Travis withdrew "any and all pending EEO complaints and appeals relative to the subject matter of these complaints."[7] Settlement Agreement, ECF No. 71-4. Ms. Travis has not argued that the settlement agreement is invalid; to the extent she alleges a breach of the agreement, the agreement provides that she should report a breach within 30 days and would then be entitled to enforce the agreement or to reinstate the complaint for further processing from the point processing ceased, neither of which she has pursued. Ms. Travis seeks to use the continuing violation doctrine to incorporate her earlier claims into this complaint. She clarified in her response to the motion for summary judgment that her claims are solely for retaliation and discrimination and that she does not state a separate claim of harassment. Pl.'s Resp. MSJ at 5, ECF No. 85. Her reliance on the continuing violation doctrine is misplaced, therefore, as she does not assert a hostile

---

[7] With respect to identifying the claims it resolved, the Settlement Agreement is incomplete. It states: "This agreement constitutes a full and final settlement of all issues arising out of the subject matter *of the following EEO complaint number(s)* and by signing this agreement the counselee withdraws any and all pending EEO complaints and appeals *relative to the subject matter of these complaints: Complaint Numbers:*" Settlement Agreement, ECF No. 71-4 (emphasis added). Though the complaint number is included at the top of each page, no complaint numbers are set forth in this portion of the Agreement; nevertheless, Ms. Travis does not argue that she did not effectively release claims arising from events that occurred before October 7, 2015. *See* Pl.'s Resp. MSJ at 3-5, ECF No. 85 (no argument that settlement agreement did not release any claims).

work environment claim,[8] and a party "may not employ the continuing violation theory 'to resurrect claims about discrimination concluded in the past, even though its effects persist.'" *EEOC v. Harvey L. Walner & Assocs.*, No. 95-cv-1355, 1995 WL 470233, at *6 (N.D. Ill. Aug. 7, 1995) (quoting *Berry v. Board of Supervisors of LSU*, 715 F.2d 971, 979 (5th Cir. 1983)). Here, the discrimination that Ms. Travis complained about had concluded and, indeed, had settled; she is not entitled to bring these incidents before the Court.

In seeking to exclude Ms. Travis's claims prior to November 16, 2015, the defendant also cites 29 C.F.R. § 1614.105 and section 666.22 of the Postal Service's Employee Relations Manual, which require a postal employee to consult an EEO counselor within 45 days of an alleged instance of discrimination. The 45-day period may be extended "when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for any other reasons considered sufficient by the agency or the [EEOC]." 29 C.F.R. § 1614.105(a)(2). Ms. Travis argues that she "had been out on medical leave since 2012 and had not been involved [in] or exposed to any training or procedural notices regarding the 45-day limit." Pl.'s Resp. MSJ at 5, ECF No. 85. Even assuming that Ms. Travis was not aware of the time limit, despite having gone through the EEO process for the events culminating in the October settlement agreement, the other factors weigh against her. Ms. Travis does not cite any extenuating circumstances that prevented her from seeking out an EEO counselor within the time limit; if she was well enough to return to work,

---

[8] Indeed, Ms. Travis expressly disavows asserting a harassment claim. *See* Pl.'s Resp. MSJ at 5, ECF No. 85.

7

presumably she was well enough to consult a counselor if she had a further grievance. To the extent she alleges defects in the DRAC meeting on November 5, 2015, she would have been aware of those defects at the time of the meeting, and her denial of accommodation letter dated December 18, 2015 specifically states that she has 45 days to seek EEO counseling, so Ms. Travis is properly considered on notice of that time limit.

All told, while the Court considers these prior incidents as background, the issues for consideration on the motion for summary judgment are properly limited to Ms. Travis's failure to accommodate and retaliation claims stemming from the denial of her accommodation on December 18, 2015 and the period from January 15 to February 24, 2016, when her notice of removal had been rescinded yet she did not return to work.

**II. Failure to Accommodate Claim**

"To establish a claim for failure to accommodate, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). For purposes of the motion for summary judgment, the Postal Service does not contest that Ms. Travis satisfies the first two elements of the claim. Mem. Supp. MSJ at 7, ECF No. 70. It contends, however, that it did not fail to reasonably accommodate Ms. Travis because (1) Ms. Travis, not the Postal Service, was responsible for the breakdown in the interactive accommodation process and (2) the Postal Service nevertheless did accommodate Ms. Travis's disability.

As to the second point, because only actions after November 16, 2015 are actionable, the evidence presented indicates that Ms. Travis was indeed accommodated. She sought EEO counseling in late December 2015, spoke with Mr. Clark for an investigative interview on February

8

24, 2016, and was promptly accommodated. She was permitted to choose a later shift and returned to work the next day. To the extent that Ms. Travis relies on flaws in the DRAC interactive process to state a failure to accommodate claim, those issues are out of scope; even if they are properly considered, however, she was the one who cause the breakdown of the interactive process by failing to provide adequate medical information that would allow the Postal Service to accommodate her.

As to the interactive accommodation process, the Rehabilitation Act, like the Americans with Disabilities Act, "envision[s] a flexible, interactive process by which the employer and employee determine the appropriate reasonable accommodation," which requires "a great deal of communication." *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000). While there is no "hard and fast rule" for assigning responsibility for the breakdown of the interactive process, when "missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process." *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135-36 (7th Cir. 1996). The interactive process, however, "is not an end in itself," and the failure to engage in the interactive process is not an independent basis for liability. *See Rehling*, 207 F.3d at 1015-16. That failure "is actionable only if it prevents identification of an appropriate accommodation for a qualified individual." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013).

As part of the October 2015 settlement agreement, Ms. Travis was referred to the DRAC to determine what sort of accommodation would be needed for her to return to work. As the committee states in its letter dated December 18, 2015, "During the DRAC Meeting the committee suggested you provide a detail medical [sic] to clarify the work restrictions provided listed above,

a proper diagnosis for the complex conditions in which you suffer and how your condition adversely impacts your treatment regimen and your activities of daily living." Accommodation Decision, ECF No. 86-6. This request comports with the Postal Service's handbook on the reasonable accommodation process, which provides that "When a disability and/or need for accommodation is not obvious or otherwise already known, reasonable documentation may be required to support the existence of a disability and the need for the accommodation requested . . . If the information provided is not sufficient to substantiate that the individual has a disability and/or needs the reasonable accommodation requested, supplemental medical information may be required . . . ." Handbook EL-307, Reasonable Accommodation, An Interactive Process, Section 223.2, ECF No. 86-6. Ms. Travis was "provided fourteen (14) days to provide documentation to support [her] need for reasonable accommodations," but did not submit supplemental documentation nor ask for an extension of time to obtain it. Accommodation Decision, ECF No. 86-6.

"Where notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification." *Sears, Roebuck & Co.*, 417 F.3d at 804. Here, the Postal Service did so: the DRAC asked for additional medical information to clarify Ms. Travis's diagnosis and to better understand what accommodations would be reasonable, which she never provided. "Because the [employer] was never able to obtain an adequate understanding of what action it should take, it cannot be held liable for failure to make 'reasonable accommodations.'" *Beck*, 75 F.3d at 1137. Ms. Travis provided a total of three medical documents from her doctor, dated December 30, 2014, August 28, 2015, and October 16, 2015, ECF No. 86-7. Each indicates that she was cleared to return to work beginning on December 16,

2014. The first does not provide a diagnosis and says that Ms. Travis "must avoid dust, fumes, mold, no physical exertion and/or stressful situations." The second includes a diagnosis of "Complex Medical Issues Including Respiratory[,] Cardiovascular[,] Chronic Fatigue Syndrome" and includes similar restrictions that she must avoid "dust, mold, no physical excretion [sic] and/or stressful situations." The third provides a diagnosis of "Complex Medical Issues – Re[s]piratory Issues" and says that Ms. Travis "should avoid as much as possible; dust, smoke, mold, strenuous exertion and stressful situations." None of the documents specifically refer to COPD or identify the disability(ies) that it causes. None addresses Ms. Travis's duties as a customer service supervisor or the effect of such disability(ies) on her ability to perform those duties. The ambiguous and generic information that these notes provide does not, in short, provide adequate information to demonstrate that Ms. Travis could perform the duties of her job with or without accommodation or identify any concrete accommodations that her unidentified disability(ies) required. Accordingly, they were inadequate to establish a need for, or type of, accommodation that would allow Ms. Travis to continue to work as a customer service supervisor for the Postal Service.

Ms. Travis's failure to supply information relevant to her need for accommodation is likely explained by the fact that she did not believe she needed an accommodation. In her deposition, Ms. Travis admitted that (1) she did not request an accommodation at the DRAC meeting (Bette Travis Dep. at 46:20–47:3, ECF No. 71-2); (2) she did not need any accommodation at that time (*id*. at 47:4-7 and 184:12-16); and (3) she did not tell the DRAC members that she needed an accommodation (*id*. at 48:14–49:1). In view of these concessions, it would be difficult to lay at the feet of the Postal Service responsibility for a breakdown of an interactive process the objective of which was to identify reasonable accommodations necessary to allow Ms. Travis to return to work.

Nevertheless, Ms. Travis attempts to do so. She complains that the DRAC meeting on November 5, 2015 was procedurally defective because there were no medical personnel at the meeting and that the decision was not rendered in a timely fashion. Pl.'s Resp. MSJ at 7-9, ECF No. 85. Neither of these issues, however, renders the accommodation process fatally flawed.[9] "Even if an employer fails to engage in the required process, that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation." *Basden*, 714 F.3d at 1039. The Court need not reach the question of whether the DRAC process was flawed given Ms. Travis's failure to produce medical documentation that would help the Postal Service determine whether she could perform the essential functions of the job and what sort of accommodation was required.

**III. Retaliation Claim**

Ms. Travis's second claim is that the Postal Service retaliated against her for her prior EEO activity by not allowing her to return to work after the notice of removal had been rescinded. To

---

[9] Even if the Court were to reach the question, Ms. Travis does not have the better of the argument. The Postal Service's guidelines for a DRAC meeting do not require any particular members to be present: the Postal Service Medical Doctor is to attend "if available," and the guidelines further provide that not all members must attend each meeting. DRAC Requirements, ECF No. 87-1. Ms. Travis's concern about the timeliness of the DRAC's decision is similarly misplaced. Based on the guidelines, the DRAC may require additional medical documentation "to explain the nature of the disability, the need for reasonable accommodation, or to clarify how the requested accommodation will assist the employee to perform the essential functions of the job." The guidelines require a decision within 20 business days only "[w]hen the need for accommodation is clear, the requested accommodation is simple and straightforward, and no extenuating circumstances appear." If the DRAC requests additional medical information, the guidelines state, it should decide whether "to adopt or deny the requested accommodation within 20 business days from the date you receive the completed documentation, absent extenuating circumstances." Handbook EL-307, Reasonable Accommodation, An Interactive Process, Section 24, ECF No. 86-6. Here, as noted, Ms. Travis never provided the completed documentation, and so the committee's decision was not untimely.

show retaliation, she must demonstrate that "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) a causal connection between the two." *Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005).[10] Ms. Travis's EEO complaint qualifies as statutorily protected activity, and the Seventh Circuit has held that "[b]eing forced to take an unpaid leave of absence certainly falls into the [] category of material adverse employment actions." *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 704 (7th Cir. 2012). Ms. Travis cannot, however, show a causal connection between her EEO activity and her failure to return to work.

As noted, any concerns stemming from Ms. Green's initial resistance to Ms. Travis returning to work in December 2014 without proper medical documentation, as well as the defective notice of removal issued in June 2015, were resolved in the October 2015 settlement agreement. Ms. Travis's operative concern is that she was not allowed to return to work in the period between rescinding the notice of removal in January 2016 and her meeting with Mr. Clark in February. During that time, however, Ms. Travis does not allege that she was ever told that she could not return to work; indeed, she received a five-day letter for not appearing at work when she was expected. "To establish the third element—i.e., a causal relation—she must show that her EEOC charge was a 'substantial motivating factor' in [the employer's] decision to require her to take an unpaid leave of absence." *Id.* Here, to the extent Ms. Travis was required to do anything, it was to report to work and submit appropriate medical documentation to allow the Postal Service to accommodate her disability that had left her unable to work for two years. There is no basis to

---

[10] While a plaintiff may show retaliation through either a direct or indirect method, *see Moser*, 406 F.3d at 903, and the defendant addresses both in the motion for summary judgment, Ms. Travis refers only to the direct method in her response. *See* Def.'s Reply MSJ at 6 n.2, ECF No. 87. Ms. Travis does not identify any similarly situated comparators who were treated better than she was as a means of showing retaliation through the indirect method.

infer that she was forced to take unpaid leave when she was expected to return to work, nor that the Postal Service's motives were retaliatory. Her retaliation claim therefore fails.

\* \* \* \* \*

For the foregoing reasons, the defendant's motion for summary judgment is granted. Final Judgment will be entered for the Postal Service.

Date: March 23, 2020

John J. Tharp, Jr.
United States District Judge